The Chief Justice

delivered the Opinion of the Court.
Charles McMullin, a free man of color — being desirous to buy his infant son John, a slave whose owner was about to take him to a foreign. State, whither he intended to remove — applied to one Leonard Wheeler, who had previously assisted him in purchasing his own manumission, to aid him in the purchase of his son, with a view to his ultimate emancipation also. Wheeler conferred with McCutchen, the owner of John, who, though willing to sell, consented, nevertheless, to take three hundred dollars from the father, for the purpose of gratifying his paternal feelings and of promoting the liberty of the' son. Wheeler, not being himself able to advance the required sum, applied to Elijah Craig, who was in the habit of loaning money at ten per cent, annual interest, and urged him to advance the' three hundred dollars, and secure reimbursement, with profit, by a lien on John Craig, whose chief object seems to have been to secure' a debt of about fifty dollars due to him from Charles Mc-Mullin, agreed to advance as much as two hundred and Seventy five dollars, provided that Charles would, on account of his said indebtedness to him, pay fifty dollars thereof. This being agreed to, Craig delivered to Wheeler two hundred and twenty five dollars, which he paid to McCutchen, and Charles also paid to him the fifty dollars he owed to Craig; thus making Craig’s entire payment two hundred and seventy five dollars; and also paid to' Me Cutchen twenty five dollars more, to complete the full price of three hundred dollars; and Me Cutchen having, thereupon made an absolute bill of sale of John to Craig, the latter wrote and delivered to Wheeler, a memorandum, reciting that, at the instance of Charles McMullin, he had bought his son for two hundred and fifty doll *312 ars, and binding himself to deliver John to his said father, or to ‘ ‘do any legal act in (his) power to secure his freedom,” if, within three years, the sum of two hundred and fifty dollars should be refunded to him, “with interest, and a reasonable allowance be made for the risk ing of his (John’s) life, not exceeding the rate often dollars per annum for the time.” This writing, not expressly naming any person as covenantee, was attested by Wheeler, and placed in his custody.
Craig having obtained and continued to hold the possession of John — Richard Pindelt, shortly before the expiration of the prescribed period of three years, tendered to him two hundred and fifty dollars, and legal interest thereon from the date of McCutchen’s bill of sale, and also about thirty dollars, for the stipulated insurance of John’s life, and demanded a delivery of John to himself, as the authorized friend of Charles McMullin, for whom he made the tender, under an agreement that, for his own indemnity, he should have the use of the boy for about ten years.
Craig rejected this proposition on two alleged grounds: first, because, as he insisted, he was entitled to two hundred and seventy five dollars, and ten per cent, for interest thereon, and ten per cent, also annually for insurance; such being, as he averred, the verbal contract, and there being, as he also averred, a mistake in the written memorandum, so far as it purports to be variant in those particulars; and, secondly — because he denied that he was bound to surrender John upon any other condition than his immediate liberation; though he admitted that he was, in principle, opposed to emancipation, and that, in making the contract, he was not influenced by benevolence, but was solely actuated by a desire to secure the debt which Charles McMullin owed, and to make profit on his money.
Shortly afterwards, Charles McMullin brought this suit in chancery, for compelling Craig to surrender John to him, upon equitable terms.
Craig, in his answer, reiterated the foregoing allegations as to the nature of the verbal contract; insisted that it should not be construed as a lien or mortgage, but *313 as a conditional sale, and denied that a proper tender had been made within the prescribed period of three years.
To decree that, on the payment of a sum of money, a slave shall be surrendered—leaving it to he party to pay in the country, is irregular. The money should be bro’t into court, by a day fixed by by its order, and upon its payment there, the surrender should be decreed.
A free man of color, who had a son who was a slave and about to be taken from the state by the owners removal, and desiring to buy the boy, intending ultimately to emancipate him, a party agreed to advance the principal part of the purchase money, and take the boy, and deliver him to his father, or do any legal act to secure his freedom, if, within three years, the father would refund the sum advanced, with ten per cent. annual interest, and ten per cent per annum for risking the boy’s dying:—
Bill for specific execution (or redemption) sustained, without question; and—
Held, that the father should be deemed the beneficial purchaser of the boy; and tho’ there was no stipulation on his part, to pay the sum advanced, it should be deemed a loan—the boy a pledge; the transaction not a conditional sale, and only six per cent for interest can be allowed on the advance.
The stipulation to pay a rate per cent. for the risk of the boy’s dying (or insurance of his life,) was not unlawful—there being no evidence that it was a cover for usury, and the contract, in that respect, may be enforced.
The party who advanced the money, held the boy, and had his services, is accountable for hire, at what the services were worth to him—common prudence being used in the management of the boy.—Mistakes in the written agreement corrected by the proof.
The Circuit Judge being of the opinion, that Charles McMullin was entitled to John, upon the condition of paying two hundred and seventy five dollars with legal interest, after deducting the value of his services, and having, by the estimated hire, reduced the amount to be thus paid to the sum of one hundred and forty three dollars, rendered a final decree requiring Craig to surrender John to his father, upon the latter’s paying to him the said sum of one hundred and forty three dollars.
In revising this decree, we should not omit noticing its obvious irregularity and improvidence in directing the surrender of John on a future contingency out of Court, to wit. the payment of one hundred and forty three dollars, in the country. The Court ought to have given a day for paying the money in Court, and upon payment thereof in Court, and not otherwise, have decreed the surrender of the boy.
But there is, in our opinion, error in one of the principles of the decree.
Properly considering all the facts, we cannot doubt that Charles McMullin Should be deemed to have been the beneficial purchaser of John. The sale was made for his benefit and that of John, and would not have been made Craig for his own use; and the entire consideration, as well as negotiation, proceeded indirectly and ultimate from Charles. Craig’s advance of the greater portion the price, was, in effect, a loan. Although there was legal obligation on Charles McMullin to refund to Craig the two hundred and seventy five dollars, jet indemnity was assured by the title to and possession of John, with the stipulated premium for insurance on his *314 life, as in a case of a bottomry or respondentia loan. It was, therefore, not usurious to exact more than six per cent, for the risk; and, upon redemption, Craig is entitled to the conventional premium for insurance; for it does not appear to have been a shift or device to cover usury.
But, as either ten dollars per annum, or ten per cent, on the sum advanced, had been expressly fixed as the maximum value of the risk, nothing more can be allowed on that account; and therefore, Craig is not entitled to more than the legal rate of interest, in addition to that prescribed premium, and should be held liable on settlement, for the value to him, of John’s services. It is evident, therefore, that the tender within the prescribed time, was of as large a sum. as Craig could have been entitled to; and as he had covenanted, either to deliver John to his father, on the prescribed conditions, or “to do any legal act in (his) power to secure his freedom,” he had’ no right to withhold the delivery to Pindell, whose contract with Charles, obviously intended to secure the ultimate liberty of John, and possibly on as good terms as the father was able to provide.
We are, therefore, of the opinion that Charles McMullin has a right to a decree for the surrender to him self of his son John, upon the condition of first paying to Craig two hundred and seventy five dollars, and six per cent, interest thereon, together with the stipulated amount of insurance, after deducting the value to Craig, of John’s services, to be applied as a credit, from year to year, up to the time of rendering the final decree.
There was an evident mistake in the written memorandum, in describing the principal sum as two hundred and fifty dollars, instead of twa hundred and seventy five dollars; and it appears also, from Wheeler’s deposition, that ten per cent, instead of “ten dollars, per annum,” was understood to be the maximum of insurance. And therefore, as Charles McMullin, in seeking equity, should obtain it only on the equitable condition of fulfilling the actual and legal intention of the parties to the contract, he should be charged with two hundred and seventy five dollars, instead of two hundred and fifty dollars, and six *315 per cent, interest thereon for forbearance, and also with a reasonable sum for insurance, not exceeding ten per cent per annum on two hundred and seventy five dollars; and from Wheeler’s testimony, we are inclined to the opinion that ten per cent, per annum, was intended to be the actual amount of insurance.
Wherefore, as the Circuit Court made no allowance for insurance, the decree, as rendered, is erroneous.
There may have been error, also, in the estimated amount for hire. As before suggested, Craig should be charged only with the actual value of John’s services to him, supposing that he made a reasonable prudent and humane use of him.
Decree reversed and cause remanded.